## Shedlock v. UPMC Presbyterian Inc.

2

C.P. of Allegheny County, nos. GD03-15564 (Consolidated) and GD02-3039.

*Joshua L. Berger* and *Suzanne S. Weiss,* for plaintiff Shedlock.
*Daniel M. Berger,* for plaintiff Waldschmidt.
*Wilbur McCoy Otto* and *S. Manoj Jegasothy,* for defendants UPMC.
*James R. Miller,* for defendants Dascani and Medical Alliance P.C.
*Deborah D. Olszewski,* for defendants Highlands Hospital and St. John's Lutheran Care Center.

*Scott D. Livingston,* for defendant Aetna US Health-care.

*Gayle L. Godfrey* and *Stephanie C. Bessko,* for defendants Allegheny General Hospital and West Penn Allegheny Health System.

*Giles J. Gaca,* for defendant Zikow.

*James A. Wood,* for defendant Alagar.

WETTICK JR., *A.J.,* November 17, 2004—The subjects of this opinion and orders of court are plaintiff's motion in *Shedlock* to compel a hospital to produce essentially the entire employment record of seven physicians who were apparently involved in plaintiff's treatment, and plaintiff's motion in *Waldschmidt* to compel production of the complete personnel files of two nurses and all respiratory therapists who provided respiratory care to the decedent on the date of a medical incident.

*Shedlock* is a medical malpractice action in which plaintiff alleges that she suffered brain damage because of defendants' overly rapid correction of her low sodium levels. Plaintiff's claims against UPMC Presbyterian Inc. are set forth in the second count of her complaint. Plaintiff alleges that the physicians, nurses, and other healthcare personnel who observed, examined, and/or treated plaintiff while she was a patient at UPMC were the agents, servants, and/or employees of UPMC acting within the course and scope of their employment. Plaintiff's complaint sets forth 16 acts of negligence, most of which relate to the negligence of the persons providing medical care with respect to regulating, adjusting, monitoring, recording and reporting plaintiff's sodium. The complaint also includes a general allegation that

UPMC was negligent in failing to have the hospital "staffed with sufficient competent physicians, nurses and other healthcare personnel" (paragraph 60) and "in failing to have plaintiff diagnosed, cared for, and/or treated by competent physicians" (paragraph 61).

Plaintiff seeks a court order compelling the hospital to provide the following documents for each of the seven physicians who, according to plaintiff's brief at 3, administered intravenous fluids to plaintiff while she was a patient at UPMC:

"Requests For Production

(1) With respect to Dr. _____ please produce:

(a) All applications for medical staff privileges. This request includes his initial application/request for privileges and all subsequent applications/requests for privileges.

(b) Lists of privileges sought by him.

(c) Letters to references to verify his education, training, experience and competence, including but not limited to those directed to his medical school and prior employers, residency program, fellowship program, director, department chairs, chiefs of staff, etc.

(d) All documents concerning his continuing medical education.

(e) All records concerning his training, experience and competence.

(f) All documents provided by him, or any other person, in support of his application/request for privileges or renewal thereof.

(g) All documents concerning your approval, denial or other decisions concerning staff privileges.

(h) All documents concerning the delineation of the privileges or limitation of privileges that were afforded to him.

(i) Any document that sets forth or describes the specific privileges or limitations of privileges granted to him by you at any time.

(j) All documents concerning inquiries made to the National Practitioner Databank.

(k) All documents received from the National Practitioners Data Bank.

(l) His residency evaluation forms.

(m) A copy of any board certifications.

(n) All documents concerning any licenses or certificates.

(o) Physician profile reports or any document regarding the type and number of procedures and/or admissions performed by him.

(p) All committee memberships.

(q) All documents concerning any claim made against him.

(r) All reports and complaints regarding him.

(s) Any complaints by patients, nurses or other staff concerning him.

(t) All letters to him and all letters from him.

(u) Actions/recommendations by credential committee, executive committee or board of trustees.

(v) All contracts entered into by and between him and Highlands Hospital.

Response:"

UPMC opposes the production of these documents on the ground that the request is overly broad and seeks

information that is not relevant to plaintiff's claims against the hospital.[1]

In *Waldschmidt,* the plaintiff's husband was transferred on August 30, 2000 from defendant Allegheny General Hospital to defendant St. John's Lutheran Care Center. Plaintiff alleges that on September 6, 2000 her husband, while at St. John's, suffered a cardiac and/or pulmonary arrest and was thereafter not properly or timely resuscitated, as a result of which he suffered severe brain damage and other injuries. The complaint's negligence allegations as to St. John's are set forth in paragraph 22 of the complaint, which reads as follows:

"(22) Defendant St. John's and its agents, servants and/or employees were negligent, reckless and careless in some or all of the following particulars:

(a) In causing and/or permitting plaintiff's decedent to suffer a cardiac and/or respiratory arrest and not to be properly resuscitated;

(b) In causing and/or permitting decedent to suffer brain damage and other injuries which occurred while decedent was a patient;

(c) In failing to monitor decedent's condition on an ongoing basis;

(d) In failing to monitor decedent's condition at necessary intervals;

(e) In failing to properly resuscitate decedent after a cardiac and/or respiratory arrest had occurred;

---

1. UPMC is not claiming that any of the documents which plaintiff seeks are protected by the Peer Review Protection Act, 63 P.S. §425.1 et seq.

(f) In failing to have sufficient physicians, nurses and/ or other healthcare professionals, properly trained, to monitor, care for and/or treat decedent;

(g) In failing to oversee the care being rendered to decedent;

(h) In failing to have its facility equipped with the equipment necessary to monitor, care for and/or treat decedent;

(i) In accepting decedent as a patient when defendant St. John's was not properly staffed and equipped to care for decedent in the condition in which he was at the time he was transferred from Allegheny General Hospital;

(j) In failing to advise the other defendants herein that it could not accept decedent as a patient because it was not properly staffed and equipped to care for decedent in the condition in which he was;

(k) In failing to transfer decedent to a highly-skilled facility which could properly care for and treat decedent;

(l) In failing to advise decedent and his family that it could not accept decedent as a patient because it was not properly staffed and equipped to care for decedent in the condition in which he was, and in failing to advise decedent and his family that decedent should be transferred to a highly-skilled facility which could properly care for him."

Plaintiff seeks a court order compelling St. John's to produce the following documents:

"The personnel files of Teri McAllister, RN, Michael Petrilla, RN, and any and all respiratory therapists who provided respiratory care to plaintiff's decedent on September 5, 2000."

St. John's opposes this discovery on the same grounds raised by UPMC in the *Shedlock* litigation.

Personnel files are generally considered by the employer and the employee to be confidential (meaning that the contents will not ordinarily be made available to third parties without the employee's consent). Consequently, these files are protected from broad unfocused discovery requests under Pa.R.C.P. 4011(b) which bars discovery which causes unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party. The protections of Rule 4011(b) are not absolute—the rule refers to an "unreasonable" burden which means that a court shall balance the needs of the party seeking discovery against the burdens which the discovery would impose. For example, where a plaintiff is claiming that he cannot return to work because of injuries sustained in an automobile accident, a court is going to permit the defendant to obtain relevant medical records, but it is not going to permit discovery as to possible marital problems even though defendant contends that this may explain why the plaintiff has not returned to work.

In *Shedlock,* plaintiff has not described the care that any of the seven physicians provided, how the care that was provided relates to the claim that the hospital was negligent in failing to have plaintiff diagnosed, cared for, and/or treated by competent physicians, or the relationship between the discovery that is sought and plaintiff's claims. For example, in its brief, plaintiff states that one of the doctors was a first-year resident in general surgery. Assuming that this doctor is one of the seven doctors who are the subjects of the discovery request, it is not clear what additional information plaintiff would need as to the background and qualifications of this first-year resident. It would appear that plaintiff's claim is that any first-year resident in general surgery is not qualified to provide the care that he or she provided, as

opposed to a claim that there was something about this particular first-year resident that is the basis for plaintiff's claim against the hospital.

What plaintiff is essentially contending is that a general allegation that a hospital was negligent in failing to have a patient diagnosed, cared for, and treated by competent physicians triggers a right to obtain all records and other documents in the possession, custody, or control of the hospital regarding each doctor who allegedly participated in the treatment and care of the plaintiff. The purpose of Rule 4011 is to prohibit such broad and unfocused discovery requests seeking records that are likely to include confidential information and appear to have almost no relevance to the subject matter of the litigation.

*Waldschmidt* also involves a broad and unfocused discovery request. In order to obtain information in the personnel files of St. John's employees, plaintiff must initially show the relationship between the care the employee provided and a specific negligence allegation. Next, plaintiff must explain how any information that plaintiff seeks from the employee's personnel file may assist plaintiff in establishing a claim against the hospital.

For these reasons, I enter the following orders of court:

## ORDER

On November 17, 2004, it is hereby ordered that plaintiff's motion to compel production is denied.

## ORDER

On November 17, 2004, it is hereby ordered that plaintiff's motion to compel production is denied.